# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 19 VARNUM STREET OPERATING COMPANY, LLC, d/b/a LEXINGTON HEALTH CARE CENTER<br>　　　　Plaintiff,<br><br>v.<br><br>DANA NICHOLS, DENISE BELLIVEAU, AND INTEGRATED HEALTH SERVICES, INC., d/b/a MEDFORD REHABILITATION AND NURSING CENTER,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. |

## OCTOBER 9, 2015 AFFIDAVIT OF SHARON DONAGHUE

I, Sharon Donaghue, being duly sworn, hereby depose and state:

1. I am over 21-years of age, and I understand and believe in the obligations of an oath.

2. I make this affidavit of my own free will and, except as where otherwise specifically noted, based upon my own personal knowledge.

3. I am the Vice President Operations for HealthBridge Management, LLC. HealthBridge Management, LLC provides management services to 178 Lowell Street Operating Company, LLC d/b/a Lexington Health Care Center ("Lexington"). In my role with HealthBridge Management, LLC, I am responsible for overseeing the operations at Lexington and I personally worked with each of the two individual defendants in this matter, Dana Nichols and Denise Belliveau.

4. HealthBridge Management, LLC is a limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 173 Bridge Plaza North, Fort Lee, New Jersey.

5. Lexington is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 173 Bridge Plaza North, Fort Lee, New Jersey. No member of Lexington is a citizen of Massachusetts.

6. Upon information and belief, Nichols, is an individual residing at 7 Briarcliff Drive, Nashua, New Hampshire.

7. Upon information and belief, Defendant Belliveau is an individual residing at 7 Wamesit Road, Tewksbury, Massachusetts.

8. Nichols and Belliveau are former employees of Lexington.

9. Upon information and belief, Defendant Integrated Health Services, Inc., d/b/a Medford Rehabilitation and Nursing Center's ("Medford") is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business at 500 Turnpike Street, Canton, Massachusetts.

10. Medford, like Lexington, provides rehabilitation and medical services. It performs those services in the town of Medford, Massachusetts.

11. Medford currently employs Nichols, Belliveau, and another former Lexington employee, Jennifer Gorrell

### Nichols's Employment with Lexington

12. On or around September 22, 2008, Nichols commenced her employment with Lexington. At all times during her employment with Lexington, Nichols was its Director of Nursing ("DON").

13. As Lexington's DON, Nichols's duties included, among other things, supervising the nursing staff, training the nursing staff on procedures, collaborating with other departments to coordinate resident care and carry out administrative functions, overseeing the implementation of internal policies and procedures, supervising the application of health care techniques, and assisting in human resources management of the Nursing Department, including, without limitation, staffing, recruitment, progressive discipline, and retention.

14. In her role as DON, Nichols supervised and worked closely with Belliveau. In fact, their offices were across the hallway from one another.

15. Upon information and belief, Nichols and Belliveau developed a close, personal friendship outside of work.

16. Email correspondence between them, which I have reviewed, corroborates the personal and extensive nature of their relationship.

17. In connection with her employment with Lexington, Nichols executed a Non-Solicitation and Confidentiality Agreement ("Agreement") on or around September 22, 2008. A true and accurate copy of the Agreement is attached hereto as **Exhibit A.**

18. The Agreement defines and protects Lexington's confidential information. It provides: "The Company has had and shall continue to have sole proprietary interest in any and all confidential data or information that is important, competitively sensitive, and not generally known by the public, which has been developed by Employee, the Company, its employees or clients, including but not limited to any and all commercial, financial, or technical information, ideas, knowhow, trade secrets, policies, reports, business plans, business methods, systems, manuals, agreements, performance statistics, supplier data, operational or administrative plans, confidential personnel information, client and/or customer (hereafter collectively "Client") lists,

prospective Client lists, any information provided by a Client, prospective Client, or party to an agreement with the Company, or any other object or document developed for the Company's business. All such information, including the Employee's own work product, shall be confidential."

19. With respect to said information, the Agreement contains the following non-disclosure provision: "Employee shall not, without the express written consent of an executive officer of the Company during the term of his/her employment and following his/her employment with the Company, disclose to any unauthorized third party or use any confidential information of the type set forth . . . above." The Employee agrees he/she shall not, except for Company purposes, reproduce or photocopy any such documents or objects which contain, or are derived from, any such confidential information, nor take away any such information upon the termination of this Agreement, regardless of the cause of termination."

20. The Agreement's employee non-solicitation provision states, in pertinent part: "The Employee further agrees that during the term of Employee's employment with the Company and for a period of one (1) year thereafter, Employee will neither directly nor indirectly employ or solicit for employment, for any purpose or on behalf [of] any entity, whether or not the Employee is employed thereby or is a consultant thereto or shareholder thereof, any individual employed by the Company at any time within ninety (90) days preceding termination of Employee's employment."

21. Despite agreeing to this employee non-solicitation provision, Nichols solicited Belliveau, who worked for Lexington within 90 days of the termination of Nichols's employment, to accept employment with Medford

22. The Agreement further states, in pertinent part: "The parties agree to the reasonableness of the restrictions in the covenants set forth above, acknowledge that they have been fairly negotiated, agree that such restrictions shall be legally enforceable and shall not be challenged by the Employee in any court proceeding. In the event of breach of this Agreement, the Employee agrees that Company shall be entitled, in addition to any other available remedies, to temporary and permanent injunctive relief without the necessity of proving actual damage or immediate or irreparable harm or for posting a bond."

23. The Agreement also provides that it "shall be interpreted and enforced in accordance with the laws of the [Commonwealth] of Massachusetts."

**Nichols's Resignation from Lexington and Employment with Medford**

24. On or around August 17, 2015, Nichols provided notice of her decision to resign from her position with Lexington, effective September 11, 2015. A true and accurate copy of Nichols's notice of resignation is attached hereto as **Exhibit B.**

25. In Nichols's resignation, she stated that she had "been offered a unique and challenging opportunity that [she was] not able to pass up."

26. Nichols's employment with Lexington ended on September 11, 2015.

27. Upon information and belief, Nichols began working for Medford shortly after the effective date of her resignation.

**Belliveau's Employment with Lexington**

28. Belliveau worked for Lexington as its Assistant Director of Nursing ("ADON") until September 25, 2015.

29. As Lexington's ADON, Belliveau reported to Nichols.

30. Her duties as ADON included day-to-day coordination and oversight of all aspects of Lexington's Nursing Department in accordance with applicable laws, regulations, and

internal policies, assisting the DON in planning, developing, and supervising the activities of the Nursing Department, and assisting in human resources management, including, without limitation, interviewing, recommending, hiring, and training employees.

**Belliveau's Resignation from Lexington and Employment with Medford**

31. On or around August 28, 2015, Belliveau provided notice of her decision to resign from Lexington, effective September 25, 2015.

32. When Belliveau informed Lexington of her resignation, Belliveau falsely reported that she would be staying at home and would not be employed in any capacity after her employment with Lexington ended.

33. Despite reporting that she would not be working after leaving Lexington, Belliveau began sending numerous confidential Lexington documents from her Lexington email to her personal email just four business days after submitting her resignation. True and accurate examples of those communications and the categories of confidential information she improperly misappropriated from Lexington are attached hereto.

34. Belliveau's employment with Lexington ended on September 25, 2015. During her four (4)-week notice period, she exported, by email, a myriad of confidential Lexington documents.

35. The confidential information those documents contain includes, but is not limited to patient names, medical information relating to patients and proposed dates of patient discharges.

36. After Belliveau left Lexington, I was informed that she had begun working for Medford shortly after her employment with Lexington terminated.

37. Based on the sequence of events – Nichols's August 17 submission of her letter of resignation, Belliveau's August 28 notice of resignation, Belliveau's September 3 transmissions of Lexington confidential information to Belliveau's personal email account, Nichols's

September 11, 2015 departure from Lexington, Belliveau's September 15 and 18 transmissions of Lexington confidential information to Belliveau's personal email account Gorrell's September 18 notice of resignation and immediate departure, Belliveau's September 21 transmission of Lexington confidential information to Belliveau's personal email account Belliveau's September 25 departure from Lexington, and the fact that each Nichols, Belliveau and Gorrell commenced employment with Medford promptly after their last dates of employment with Lexington, I believe that these three employees colluded to leave Lexington and enter into employment relationships with Medford.

### Solicitation of Lexington Employees

38. From June 8, 2015 to September 18, 2015, Jennifer Gorrell ("Gorrell") was employed by Lexington its Director of Admissions.

39. On or about September 18, 2015, Gorrell resigned from her position with Lexington without notice.

40. Sequentially, the resignations are as follows: (i) Nichols announces her intention to resign on August 17, 2015; (ii) Belliveau announces her intention to resign on August 28, 2015; (iii) Nichols resigns on September 11, 2015; (iv) Gorrell announces her resignation and resigns on September 18, 2015; and (v) Belliveau resigns on September 25, 2015.

41. Shortly after Gorrell's abrupt resignation, on or about September 23, 2015, Lexington sent Nichols a letter reminding her of the Agreement's existence and her non-solicitation obligations thereunder. Lexington attached a copy of the Agreement to the letter and provided a copy of the letter and the agreement to Bruce Bedard ("Bedard"), the Chief Executive Officer of Medford, thereon. A copy of said letter is attached hereto as **Exhibit C.**

42. I was informed that Gorrell began working for Medford shortly after her resigning from Lexington.

7

43. Upon information and belief, Nichols and/or Belliveau solicited Gorrell to terminate her employment relationship with Lexington and to enter into an employment relationship with Medford.

**Misappropriation of Lexington's Trade Secrets**

44. After giving her notice of her intention to resign, Belliveau emailed several of Lexington's forms and policies to her personal email address. True and accurate copies of these emails are attached hereto as Exhibits D-S. A complete index of all of the exhibits submitted herewith (including Exhibits A-C) is set forth here:

| EX | FROM | TO | SENT | ATTACHMENT DOC NAME |
|---|---|---|---|---|
| A | n/s | n/a | n/a | Confidentiality Agreement between Lexington Health Care Center and Dana Nichols |
| B | Dana Nichols, LNHA, RN | To Whom it May Concern | 8/17/15 | Letter of Resignation of Dana Nichols, effective September 11, 2015 |
| C | Lisa Crutchfield, Esq. | Dana Nichols cc: Sharon Donaghue, VP of Operations, Thomas McKinney, SVP and Deputy General Counsel, Bruce Bedard, CEO, Everett Rehab, Medford Rehab and Cambridge Rehab | 9/23/15 | September 22, 2008 Non-solicitation and Confidentiality Agreement between Lexington Health Care Center and Dana Nichols |
| | | | | |
| D | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 4:59 p.m. | August 25 flu letter.doc |
| E | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:01 p.m. | vaccine_refrigerator_temp_log.pdf |
| F | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:02 p.m. | June 22 Infection Control.doc |
| G | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 4:59 p.m. | August 25 flu letter.doc |
| H | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:03 p.m. | December Infection Control.doc |
| I | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:04 p.m. | prednisone.doc |

| EX | FROM | TO | SENT | ATTACHMENT DOC NAME |
|---|---|---|---|---|
| J | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:05 p.m. | Psychotropic drug use.doc |
| K | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:06 p.m. | REFLUX.doc |
| L | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/3/15 5:08 p.m. | PPS SCHEDULER effective 10-01-2013.doc |
| M | Denise Belliveau <dbelliveau@lexingtonhcc.com> | dnichols@medfordrnc.com | 9/18/2015 10:43 a.m. | report.sheet.pdf |
| N | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/18/15 3:47p.m. | Attention all Nurses.doc; August 31.docx; CNA assignment-6man.xls; COHB new Initiatives 9-2011 DC Management final.ppt; Copy of Copy of Copy of Copy of Discharge Calender.xls; Discipline Notice Form.doc; Doc1.doc; DPH blank template Dambrosia 4-5-15.rtf; duggan2.doc; EDITING ASSIGNMENT FOR MAY 2015 MM Unit.doc; PPS SCHEDULER effective 10-01-2013 (2).xls; report sheet.pdf |
| O | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/18/15 3:52 p.m. | UPDATEDCIRCULAR LETTER –DHCQ 13-11-604.pdf; Hourly check.doc; LONG TERM CARE FAX REPORTING OF INCIDENTS AND ABOUSE.mht; PPS SCHEDULER effective 10-01-2013 (2).xls; Chinese translation.doc |
| P | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/21/15 12:59 p.m. | Duggan2.doc; DPH blank template Dambrosia 4-15-15.rtf; Discipline Notice Form.doc; Copy of Copy of Copy of Copy of Discharge Calendar.xls; EDITING ASSIGNMENT FOR MAY 2015 MM Unit.doc |
| Q | Denise Belliveau [mailto:dbelliveau@lexingtonhcc.com] | Dana Nichols [mailto:dnichols@medfordrnc.com] | 9/21/15 3:07 p.m. | Re: Dinner |

| EX | FROM | TO | SENT | ATTACHMENT DOC NAME |
|---|---|---|---|---|
| R | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/21/15 5:01 p.m. | C.difficile data worksheets please!.htm; Confirmation (5411) Improving Drug Use to Enhance Prevention Antibiotic Stewardship and Beyond Audio Conference.htm; Copy of Cdiff worksheet.xls; Copy of CdiffaggregateLTC (4) (2).xls; Environmental-Cleaning-Checklist adapted for MA use g bennett (2).doc; hand_hygiene_supplement.pdf; INANIMATE ENVIRONMENT.ppt; MetroWest Partner CDI Questionanaire.docx; Administrator Guide to Applicant Questions.doc; Danielle H.doc; 224_318_Poster_CallDontFall.pdf; FW IMG00018-20110114-1004.jpg.htm; FW IMG00023-20110114-1016.jpg.htm; FW IMG00025-20110114-1019.jpg.htm; FW IMG00050-20110114-1108.jpg.htm; FW IMG00053-20110126-1109.jpg.htm; FW IMG00053-20110126-1109.jpg.htm; FW IMG00053-20110126-1108.jpg.htm; FW IMG00053-20110126-1108.jpg.htm; FW IMG00053-20110126-1108.jpg.htm; FW IMG00088-20110126-1129.jpg.htm; FW IMG00108-20110317-0744.jpg.htm; FW IMG00118-20110317-1601.jpg.htm; FW  IMG00130-20110403-1024.jpg; IMG00132-20110406-1153.jpg.htm; FW.htm; G-tube_Patient Education.pdf; Guidelines for Using a Telephone Interpreter.doc; J-tube_Patient Education.pdf; TF Infection Patient Education.pdf; TF Toloerance Patient Education.pdf; Village at Winnipesaukee Notification 7-12-2007.pdf |

| EX | FROM | TO | SENT | ATTACHMENT DOC NAME |
|---|---|---|---|---|
| S | Denise Belliveau <dbelliveau@lexingtonhcc.com> | belliveaudenise@gmail.com | 9/21/15 5:06 p.m. | 2009 nation patient safety goals joint commish.doc; Anticoagulation Management Program JCAHO2.doc; Cdiff patient family education.doc; contact precautions info sheet.doc; Copy of coumadin audit tool.xls; Copy of HVA - VA template.XLS; credentialing status MD-NP.xls; Droplet precautions family-patient education sheet.doc; Heparin audit tool.xls; JC Privilege letter to md-np.doc; Joint comm Photo ID Check-credential ppwk.htm; LT Staff Eff Report of review.doc; pets posting.doc; PGCC Administration Times.doc; PICC Program Joint Commish.doc; READ Back Joint Comish policy.doc; RN Cosign assessment memo.htm; sentinel event policy.doc; Staff Eff Report of review.doc; Staffing Effectiveness all units.xls; Staffing Effectiveness.doc; VRE patient-family information.doc |

45. After Nichols left Lexington and joined Medford, but before Belliveau did so, Belliveau sent Nichols at least one of Lexington's forms and policies to Nichols's Medford email address.

46. The email to which the relevant policy was attached read: "Here you go lovey!! See you tonight for dinner ☺"

47. Upon information and belief, Nichols, Belliveau, and Medford have used Lexington's forms and policies to revise, modify, supplement, and/or replace Medford's forms and policies and/or disclosed same to others at Medford.

48. Lexington's trade secrets include, without limitation, its forms and policies.

49. Lexington undertook reasonable measures to safeguard its confidential information and trade secrets, including, without limitation, requiring employees to maintain the confidentiality of Lexington's confidential information, securing computer files and computer access with

password protecting, ensuring compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), providing HIPAA-related training, and taking other reasonable measures to protect the confidentiality of its trade secrets and patient information.

50. Lexington invested substantial amounts of time and money into developing its trade secrets.

51. Nichols and Belliveau worked in managerial capacities for Lexington as DON and ADON

52. Each Nichols and Belliveau had access to Lexington's trade secrets and other confidential information.

53. Nichols and Belliveau occupied positions of trust and confidence while employed by Lexington.

54. Upon information and belief, Nichols and Belliveau spoke to Gorrell about employment opportunities with Medford and solicited her to work for Medford before Nichols and Belliveau had resigned from Lexington.

55. As a result of Nichols's and Belliveau's conduct, Lexington already has suffered irreparable harm and is likely to sustain monetary damages in excess of $75,000.

56. Lexington apprised Medford was informed of Nichols's obligations under the Agreement, in writing, on September 23, 2015. This date was two (2) days before Belliveau's resignation from Lexington became effective and several days before Belliveau commenced employment with Medford.

57. When Medford permitted Belliveau to commence employment despite Medford's actual knowledge of Nichols's post-employment obligations to Lexington, Medford knowingly,

maliciously, and in bad faith interfered with Lexington's contractual and advantageous relationships with Nichols and Belleville.

58. Belliveau and Nichols acquired vast amounts of Lexington's confidential information while employed therewith.

59. Lexington took reasonable steps to safeguard the secrecy of its trade secrets and confidential information, and Lexington's trade secrets and confidential information are not known outside of Lexington.

60. Lexington has expended significant amounts of time and money in developing its trade secrets and confidential information/.

61. Those trade secrets are valuable to Lexington and any other entity who renders the same or similar services, such as Medford.

62. Medford, Nichols, and Belliveau used and/or disclosed, and continue to use and/or disclose, or inevitably will use and disclose, Lexington's confidential information and trade secrets for the benefit of themselves without Lexington's express or implied consent.

63. On information and belief, at all times relevant to this action, Medford has been engaged in trade or commerce within the meaning of M.G.L. c. 93A §§ 2, 11.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9th DAY OF OCTOBER 2016

                                     /s/ Sharon Donaghue
                                     Sharon Donaghue

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on October 9, 2015.

/s/ Danielle Y. Vanderzanden  
Danielle Y. Vanderzanden

22635419.1