United States District Court
District of Massachusetts

——————————————————   )
178 LOWELL STREET OPERATING   )
COMPANY, LLC,   )
                              )
          Plaintiff,          )
                              )
          v.                  )
                              )          Civil Action No.
DANA NICHOLS, DENISE BELLIVEAU, )        15-13547-NMG
INTEGRATED HEALTH SERVICES, INC. )
d/b/a MEDFORD REHABILITATION AND )
NURSING CENTER and MRNC       )
OPERATING, LLC d/b/a MEDFORD  )
REHABILITATION AND NURSING    )
CENTER,                       )
                              )
          Defendants.         )
——————————————————   )

MEMORANDUM & ORDER

GORTON, J.

This case arises out of allegations by an employer that its former director solicited its employees to work at her new company and used or disclosed the employer's confidential information or trade secrets without authorization.

Pending before the Court is plaintiff's renewed motion for a temporary restraining order ("TRO"). For the reasons that follow, plaintiff's motion for injunctive relief will be allowed, in part, and denied, in part.

## I.   **Background**

### A.   **The parties**

Plaintiff 178 Lowell Street Operating Company, LLC d/b/a Lexington Health Care Center ("Lexington") is a Delaware limited liability company that provides rehabilitation and medical services at a facility in Lexington, Massachusetts.  None of the members of Lexington is a citizen of Massachusetts.

Defendant Integrated Health Services, Inc. d/b/a Medford Rehabilitation & Nursing Center ("Medford") is a Massachusetts corporation with a principal place of business in Massachusetts. Medford provides rehabilitation and medical services at a facility in Medford, Massachusetts.

Defendant MRNC Operating, LLC ("MRNC") d/b/a Medford is a limited liability company and, although it is the residency of such an entity's members and not its place of business that controls personal jurisdiction, plaintiff simply reports that its principal place of business is in Massachusetts.

Defendant Dana Nichols ("Nichols") is the Administrator at Medford. She resides in New Hampshire.  Prior to her employment at Medford, she was the Director of Nursing at Lexington. Defendants suggest that she was also promoted to Lead Director of Nursing and, most recently, to Administrator in Training.

In 2002, Nichols signed a Non-Solicitation and
Confidentiality Agreement ("the Agreement") that prohibited her
from 1) directly or indirectly employing or soliciting
Lexington's employees within 90 days preceding her departure
from Lexington and for one year thereafter and 2) disclosing
Lexington's confidential information and trade secrets.  On
August 17, 2015, Nichols allegedly informed Lexington that she
intended to resign in order to pursue a better opportunity
elsewhere.  Nichols resigned on September 11, 2015.

Defendant Denise Belliveau ("Belliveau") is the Director of
Nursing at Medford.  She resides in Massachusetts.  Prior to her
employment at Medford, she was the Assistant Director of Nursing
at Lexington and reported directly to Nichols.  On August 28,
2015, Belliveau purportedly informed Lexington that she intended
to resign in order to spend more time with her family at home.
Belliveau resigned on September 25, 2015.

Non-party Jennifer Gorell is the Director of Admissions at
Medford.  Before her employment at Medford, she was the Director
of Admissions at Lexington.  On September 18, 2015, Gorell
allegedly informed Lexington that she intended to resign because
of health issues and because she had "too much" work at
Lexington.  Gorell resigned on that same day.

**B.    The alleged conduct**

Lexington asserts that Nichols violated her contractual obligations when she 1) participated in soliciting and hiring Belliveau, Gorell and other former Lexington employees to work at Medford and 2) misappropriated Lexington's trade secret and confidential information.  Lexington contends that Nichols did so despite its letter to her dated September 23, 2015 reminding her of, and demanding compliance with, her post-employment obligations under the Agreement.  Lexington avers that it sent Medford a copy of that correspondence and that Medford knew, or should have known, about Nichols's non-solicitation and confidentiality obligations.

Lexington alleges that Medford, through its Chief Executive Officer Bruce Bedard ("Bedard"), 1) "knowingly colluded" with Nichols to solicit Belliveau, Gorell and other Lexington employees to become employed at Medford and 2) willfully and knowingly participated in the breach by Nichols of her contractual obligations to Lexington.

Lexington declares that Belliveau, before her resignation, e-mailed several of Lexington's forms and polices containing confidential and trade secret information from her Lexington e-mail address to her personal e-mail address and to Nichols's Medford e-mail address.

Lexington further submits that Belliveau and Gorell "concocted" false explanations for their resignations in order to "hide Nichols's and Medford's improper solicitation."

### C.   Procedural history

In early October, 2015, Lexington filed this lawsuit asserting that defendants unlawfully solicited its employees and misappropriated its confidential and trade secret information. Lexington claims that those actions constituted 1) a breach of contract by Nichols, 2) breaches of the fiduciary duty of loyalty by Nichols and Belliveau, 3) aiding and abetting the breaches of such duties by Medford, 4) intentional interference by Medford with the contractual relationship between Lexington and Nichols, 5) misappropriation of confidential and trade secret information by all defendants and 6) unfair and deceptive trade practices by Medford in violation of M.G.L. c. 93A, §§ 2 and 11 ("Chapter 93A").  Lexington amended the complaint shortly thereafter to name MRNC d/b/a Medford as an additional defendant.

In mid-October, 2015, Lexington moved for a temporary restraining order 1) to enjoin defendants from soliciting Lexington employees, performing services for Medford and using or disclosing Lexington's confidential or trade secret information, 2) to require the immediate return of all copies of such information and 3) to direct defendants to provide an

accounting of any materials that incorporate, involve or rely on such information.  Lexington also moved for limited, expedited discovery of materials demonstrating that defendants solicited its employees and misappropriated its confidential and trade secret information.

The Court convened a motion hearing in late October, 2015 and authorized the parties to conduct limited discovery on the narrow issue of whether defendants solicited Lexington employees to work at Medford.  It directed the parties to submit supplementary memoranda after the conclusion of limited discovery.  It also ordered Belliveau to return to plaintiff any Lexington materials that she had e-mailed to herself.  The Court then held under advisement the motion for injunctive relief.

In November, 2015, the parties stipulated to, and the Court entered, 1) a protective order with respect to confidential documents produced or obtained during the action and 2) a "temporary order" a) prohibiting Nichols from violating her contractual duties to Lexington, b) prohibiting Belliveau, Gorell and any other former Lexington employees from performing services for Medford, c) requiring Medford to prevent Nichols and Gorell from violating their contractual duties to Lexington on Medford's behalf and d) ensuring that the parties continue their "good faith, collaborative efforts" to return hardcopies of Lexington documents to Lexington and to erase any electronic

copies of Lexington documents located on defendants' computers. The stipulated "temporary order" was to remain in effect until when and if one party moved for a hearing on the pending motion for injunctive relief.

In December, 2015, defendants, having retained new counsel, moved for a hearing on injunctive relief.  Lexington refiled its motion for a temporary restraining order that incorporated some of the information obtained from the limited discovery.  The Court held a motion hearing on January 14, 2016 and took the matter under advisement.

## II.  **Plaintiff's motion for a TRO**

### A.  **Legal standard**

In order to obtain a preliminary injunction or temporary restraining order, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007); Largess v. Supreme Judicial Ct., 317 F. Supp. 2d 77, 81 (D. Mass. 2004); Quincy Cablesys., Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1160 (D. Mass. 1986).  Of these factors, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976). The Court may also rely on otherwise inadmissible evidence, including hearsay. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986). Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

**B.   Application**

**1.   Likelihood of success**

**a.   <u>Count 1</u>: Breach of contract claim against Nichols**

A plaintiff alleging a breach of contract must demonstrate 1) the existence of a contract, 2) its performance or willingness to perform under the contract, 3) breach by the defendant and 4) if it seeks damages, causation and the amount of damages. Amicas, Inc. v. GMG Health Sys., Ltd., 676 F.3d 227, 231 (1st Cir. 2012).

Lexington characterizes its Agreement with Nichols as a valid contract with enforceable non-solicitation and confidentiality provisions.

-8-

### i.    Enforceability of the non-solicitation provision

An employer can enforce a covenant not to compete if it is 1) necessary to protect a legitimate business interest, 2) reasonably limited in time and space and 3) consistent with the public interest. RE/MAX of New England, Inc. v. Prestige Real Estate, Inc., 2014 WL 3058295, at *2 (D. Mass. July 7, 2014)(citing Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639 (2004)).

Lexington alleges that the non-solicitation provision is an enforceable covenant not to compete because Nichols agreed, pursuant to another provision in the Agreement, that the covenant was reasonable and legally enforceable and that she would not challenge the validity of the provision in any court proceeding.  Lexington further argues that, even if Nichols had not so agreed, the non-solicitation provision is enforceable on its merits because 1) Lexington has a legitimate interest in retaining its high-ranking administrators and employees, 2) the one-year prohibition on solicitation is reasonable and is less onerous than other non-solicitation provisions which have been upheld and 3) the enforcement of employment contracts and protection of an employer's interest in retaining its employees are in the public interest.

Defendants respond that the non-solicitation provision is unenforceable because M.G.L. c. 112, § 74D prohibits employers

from imposing contractual covenants that restrict the right of a nurse, such as Nichols, to practice as a nurse in any geographical area for any period of time after termination of the employment relationship.

Section 74D does not, however, apply to this case because it prohibits an employer from contracting with a nurse to restrain the post-employment right of that particular nurse, as opposed to another nurse, to practice nursing after termination. Here, the covenant at issue is the non-solicitation provision in the Agreement between Lexington and Nichols.  Section 74D would prohibit Lexington from restricting Nichols's right to practice nursing after she ended her employment at Lexington but has nothing to do with her obligations under the Agreement. Defendants' reliance on § 74D is misplaced.  Nor does M.G.L. c. 112, § 12X apply here because that statute specifically applies to physicians.

Lexington has met its burden of demonstrating that it will be able to show that the contested, non-solicitation provision is reasonable and supported by both a legitimate business interest and the public interest.  Accordingly, Lexington is likely to succeed in establishing the enforceability of the non-solicitation provision.

ii. **Enforceability of the Agreement as a whole**

More broadly, defendants aver that the Agreement as a whole is unenforceable under the "material change doctrine" which provides that:

> Each time an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship[,] a new restrictive covenant must be signed.

Lycos v. Jackson, 2004 WL 2341335, at *3 (Mass. Super. Ct. Aug. 25, 2004); Rent-A-PC v. March, 2013 WL 2394982, at *2 (D. Mass. May 28, 2013)(citing Lycos)).  Changes such as a promotion to a new position, an increase in salary or a conferral of additional responsibilities can be evidence of a material change in the employment relationship. Lycos, 2004 WL 2341335, at *3.

Here, defendants assert that Nichols experienced two material changes in her employment relationship with Lexington given that she 1) started at Lexington as a Director of Nursing, 2) was promoted in 2011 or 2012 to Lead Director of Nursing, received a raise and assumed new responsibilities such as training other Directors of Nursing and 3) was promoted in 2013 to Administrator in Training.  As such, Nichols was required to work in various Lexington departments, gradually assume the duties of a nursing home administrator and pass a licensing examination.  Defendants conclude that those material changes occurred seven years after the execution of the Agreement and,

when combined with the parties' failure to renew the contract, rendered the Agreement invalid and unenforceable.

Lexington denies that Nichols underwent any material change in her employment status or that the Agreement was invalidated. It avers that 1) Nichols worked as a Director of Nursing during the entire period of her employment, 2) it did not promote her to Lead Director of Nursing, a position which does not exist at Lexington, 3) it permitted, but did not require, her to complete an administrator-in-training licensure program, 4) it did not promote her to Administrator in Training and 5) she experienced only minor changes in responsibilities during her employment. Lexington asserts that the cases cited by defendants are distinguishable because they involved more significant changes in the employment relationship and an intent to abandon the initial restrictive covenant.

The Court agrees with Lexington and concludes that it is likely to succeed in establishing that it had a valid Agreement with Nichols containing enforceable non-solicitation and confidentiality provisions.

### iii. Lexington's performance under the contract

The parties do not dispute that Lexington satisfied its obligations under the Agreement by hiring and continuing to employ Nichols until the date of her voluntary resignation.

-12-

Lexington is thus likely to satisfy the second requirement of a breach of contract claim.

### iv.   Breach of the contract by Nichols

Lexington contends that Nichols breached the non-solicitation and confidentiality provisions of the Agreement when she solicited Belliveau and Gorell to leave Lexington for Medford shortly after her own departure and received at least one Lexington document, titled "Daily Morning Meeting Report," directly from Belliveau's Lexington e-mail address.

Lexington proffers various electronic and telephone communications to and/or from Nichols, Belliveau and Gorell as evidence that 1) Nichols and Belliveau coordinated their applications to Medford for employment and their resignations from Lexington and 2) Nichols encouraged Gorell's decision to secure employment with Medford before she resigned from Lexington.  Defendants deny that the subject communications constitute solicitation and declare that Nichols could not have solicited Belliveau or Gorell because they had already independently decided to resign from Lexington due to personal dissatisfaction with their employment.

The Court again agrees with Lexington and finds that it is likely to succeed in its claim that Nichols solicited Belliveau and Gorell in breach of the non-solicitation provision.

With respect to the claim that Nichols breached the confidentiality provision, Lexington contends that Nichols

> unquestionably received a Lexington document directly from Belliveau's Lexington [e-mail] address . . . The obvious inferences [are] that Nichols used the Lexington documents to revise similar documents at Medford and likely disclosed them to other Medford agents and employees, all in violation of her Agreement.

Neither bare assertions nor "obvious inferences" that Nichols used and "likely" disclosed confidential documents are, however, sufficient to establish a breach of the confidentiality provision in the absence of factual allegations or supporting evidence.  The fact that Nichols may have received such information does not by itself indicate that she used or disclosed it.

Accordingly, the Court finds that, at this preliminary stage, Lexington will likely succeed in its breach of contract claim with respect to the non-solicitation provision but not with respect to the confidentiality clause.

### b.   __Count 6__: Intentional interference with contractual relations claim against Medford

A claim of intentional interference with contractual relations requires a plaintiff to demonstrate that 1) it had a contract with a third party, 2) the defendant knowingly induced that third party to violate the contract, 3) the interference was intentional and improper in motive or means and 4) the

plaintiff was harmed by the defendant's actions. <u>G.S. Enters.,</u> <u>Inc.</u> v. <u>Falmouth Marine, Inc.</u>, 410 Mass. 262, 272 (1991).

Here, Lexington submits that Medford intentionally interfered with Lexington's contractual relations with Nichols because 1) the Agreement between Lexington and Nichols was an enforceable contract, 2) Medford was sent a copy of the Agreement by Lexington and thus had actual knowledge, or at least notice, of Nichols's contractual obligations yet permitted Nichols to hire and to employ Belliveau and Gorell, 3) Medford's conduct was thus intentional and improper and 4) the interference caused Lexington to lose employees. Medford's actions also allegedly allowed it to avail itself favorably of Lexington's confidential and trade secret information.

Defendants respond by denying that Nichols hired or employed Belliveau or Gorell in violation of the non-solicitation provision. As discussed above, however, the Court has already found that Lexington will likely succeed in establishing that Nichols solicited Belliveau and Gorell in breach of that provision.

Accordingly, Lexington will likely succeed in its claim of intentional interference by Medford with its contractual relationship with Nichols.

c.   <u>Count 7</u>: **Misappropriation of trade secrets claim against Nichols, Belliveau and Medford**

A trade secret is

> any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

<u>J.T. Healy & Son, Inc.</u> v. <u>James A. Murphy & Son, Inc.</u>, 357 Mass. 728, 729 (1970). A "[m]atter of public knowledge or of general knowledge in an industry" is not a trade secret. <u>Id.</u> The factors that determine whether information qualifies as a trade secret include:

> 1) the extent to which the information is known outside of the business;
> 2) the extent to which it is known by employees and others involved in the business;
> 3) the extent of measures taken by the employer to guard the secrecy of the information;
> 4) the value of the information to the employer and to his competitors;
> 5) the amount of effort or money expended by the employer in developing the information; and
> 6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

<u>Jet Spray Cooler, Inc.</u> v. <u>Crampton</u>, 361 Mass. 835, 840 (1972).

In order to sustain a claim for misappropriation of trade secrets, a plaintiff must establish that 1) the information is a trade secret, 2) it took reasonable steps to preserve the secrecy of that information and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use that information. <u>Data Gen. Corp.</u> v. <u>Grumman Sys. Support Corp.</u>, 36 F.3d 1147, 1165 (1st Cir. 1994), <u>abrogated on other</u>

grounds by <u>Reed Elsevier, Inc.</u> v. <u>Muchnick</u>, 559 U.S. 154, 159-60 & n.2 (2010).

Here, Lexington alleges that Belliveau improperly sent numerous Lexington forms and policies, including calendars with patient discharge dates and "Lexington's explanation of non-coverage for Medicare patients," to herself and to Nichols without authorization.  Those materials purportedly contain confidential information such as patient records and trade secrets such as operational procedures that 1) Lexington developed after it invested time and money, 2) are not known outside of the company and 3) would provide value to its competitors.  Lexington claims that it reasonably safeguarded the information by imposing confidentiality requirements, securing computer files and access with password protection, complying with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and providing HIPAA training.

Defendants concede that patient information protected under HIPAA qualifies as confidential information but deny that the Lexington documents sent by Belliveau contain trade secret information.  Defendants explain that the documents consist of forms and non-proprietary information which do not contain technical descriptions, client lists or any other information that could provide the recipient with a competitive advantage.

At least at this stage of the litigation, Lexington's misappropriation claim is lacking because it has not plausibly identified a trade secret in the documents at issue.  Lexington does not specifically point to documents that purportedly contain trade secrets or describe how the information in those documents would provide a competitive advantage to its rivals. Blanket assertions that particular information constitutes a trade secret, in the absence of supporting factual allegations, do not suffice to show a likelihood of success on a misappropriation claim.  The fact that the documents at issue contain HIPAA-protected patient information does not, by itself, establish the likely existence of a trade secret.

Accordingly, Lexington is, as yet, unlikely to prevail on its misappropriation claims.

### d.  Count 8: M.G.L. c. 93A claim against Medford

Chapter 93A provides a cause of action for any person 1) engaged in trade or commerce who 2) suffers a loss of money or property 3) as a result of 4) the use or employment of an unfair method of competition or unfair or deceptive act or practice by another person engaged in trade or commerce. M.G.L. c. 93A, § 11.  A plaintiff with a Chapter 93A claim must

> demonstrate an unfair or deceptive practice that falls
> within at least the penumbra of some common-law,
> statutory, or other established concept of unfairness.

Am. Paper Recycling Corp. v. IHC Corp., 775 F. Supp. 2d 322, 332 (D. Mass. 2011)(internal quotation marks omitted).  A corporate plaintiff faces "a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." Id.

Lexington argues that its Chapter 93A claim is likely to succeed because 1) it is engaged in the nursing care industry, 2) Medford's actions caused Lexington to lose employees and made Lexington's confidential and trade secret information available to Medford to Lexington's competitive disadvantage and 3) Medford's conduct amounted to the unfair or deceptive practice of intentional interference with the contractual relations between Nichols and Lexington.  Defendants apparently do not oppose Lexington's assertions.

The Court agrees with Lexington and finds that it will likely prevail in its Chapter 93A claim against Medford.

### 2.   Other factors

Because Lexington is likely to succeed on some but not all of its claims, i.e. the non-solicitation portion of the breach of contract claim against Nichols and the intentional interference and Chapter 93A claims against Medford, the Court will consider the remaining factors for injunctive relief in the context of those claims only.

Lexington declares that it will suffer irreparable harm without injunctive relief because of the threat that defendants

-19-

will solicit its employees in the future and that it will lose
employees to Medford, particularly in light of defendants'
alleged successes with respect to Belliveau and Gorell.  See
Advanced Micro Devices, Inc. v. Feldstein, 2013 WL 10944934, at
*12 (D. Mass. May 15, 2013)("Courts have routinely accepted the
threat of future solicitation as a qualifying irreparable
harm . . . [Plaintiff] must show a likelihood that Defendants
will engage in future solicitation given their alleged past
solicitation.").

      Defendants respond that there is no threat of future
solicitation because they did not solicit Belliveau or Gorell in
the first place.  They maintain that Belliveau and Gorell
resigned from Lexington based upon their own employment issues
and dissatisfaction with their work at Lexington.

      The Court is persuaded by plaintiff and finds that it has
presented a likely threat of future solicitation by defendants
and the irreparable harm factor thus favors the imposition of
injunctive relief.  That threat does not, however, warrant
requiring Medford to terminate Belliveau's employment or
enjoining her from performing services for Medford.  That is
because Belliveau's short exile this past Fall is deemed to have
sent a sufficient message to potential employees and Medford
alike to avoid such conduct.  Furthermore Belliveau's continued
employment at Medford will not subject Lexington to additional

-20-

harm, given that 1) she was not and is not a high-level employee and 2) it is unlikely that Lexington will be able to demonstrate that she misappropriated trade secrets in the past or is likely to do so in the future.

In conclusion, the irreparable harm, balance of hardships and public interest factors favor the imposition of an injunction only with respect to protecting Lexington from the threat of future solicitation.

### ORDER

For the foregoing reasons, plaintiff's motion for a temporary restraining order (Docket No. 71) is, with respect to the request to enjoin defendants from soliciting certain Lexington employees in the future, **ALLOWED**, but is otherwise **DENIED**.  A preliminary injunction in the form attached hereto as Exhibit A will be entered.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 22, 2016